# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TOMI JO IGLESIAS,**

        **Plaintiff,**

**-vs-**                                               **Case No. 6:07-cv-1035-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Plaintiff did not waive her right to oral argument; however, she did not formally move to have oral argument in the case. *See* Doc. No. 15 at 2. The Court has determined that argument would not materially assist the decision making process in this case.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## *I. BACKGROUND*

### A.     Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on January 23, 2004. R. 56-58. She alleged an onset of disability on December 18, 2002, due to a back disorder and diabetes mellitus.

R. 23, 25. Her application was denied initially and upon reconsideration. R. 23-26, 32-39. Plaintiff requested a hearing, which was held on June 6, 2006, before Administrative Law Judge Jimmy N. Coffman (hereinafter referred to as "ALJ"). R. 273-80. In a decision dated September 21, 2006, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 13-21. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 10-12. The Appeals Council denied Plaintiff's request on May 18, 2007. R. 4-7. Plaintiff filed this action for judicial review on June 19, 2007. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a back disorder and leg numbness, diabetes mellitus, obesity, hypertension, carpal tunnel syndrome, and depression. R. 23, 25, 276-79. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from obesity at 320 pounds and 5 feet 8 inches in height; mild degenerative discogenic disease, diabetes, and L5-S1 central herniated nucleus pulposus (HNP) (R. 19), which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19, 20. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light exertional level work, as she could occasionally lift and carry twenty pounds, frequently lift and carry 10 pounds; stand, sit, and/or walk about six hours in an eight-hour workday. R. 21. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible. R. 21. Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work as an office worker, which did not require the performance of work-related activities precluded by the claimant's residual functional

capacity. R. 21, Finding 6. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 21, Finding 7.

Plaintiff asserts three points of error. First, Plaintiff contends the ALJ erred by finding that Plaintiff's carpal tunnel syndrome, depression, and hypertension were not severe impairments. Second, she argues that the ALJ erred by finding her capable of past relevant work and not obtaining vocational expert (VE) testimony because Plaintiff suffered non-exertional impairments. Third, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### *III. ANALYSIS*

#### A.   **Severe impairments**

The ALJ found Plaintiff had the severe impairments of obesity at 320 pounds and 5 feet 8 inches in height; mild degenerative discogenic disease, diabetes, and L5-S1 central herniated nucleus pulposus (HNP). R. 19. Plaintiff argues that the ALJ erred in concluding that the Plaintiff does not suffer from the severe impairments of carpal tunnel syndrome, hypertension and depression, and ignored the evidence of record supporting these impairments. The Commissioner responds that the ALJ properly considered all of Plaintiff's impairments.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

### *Hypertension*

On February 15, 2005, the Plaintiff was seen at Brevard Health Alliance and assessed by Dr. Gavin. R. 259. Plaintiff contends that Dr. Gavin diagnosed her with hypertension noting a blood pressure reading of 148/80. R. 259. However, the treatment notes from that date indicate that she had not seen a doctor for one year (February 2004 to February 2005) and was not taking her diabetes medication. R. 259. Dr. Gavin noted that Plaintiff "also feels like her [blood pressure] is up and has [headaches] due to this. She has never been treated for [blood pressure] in the past." R. 259. Plaintiff cites this singular instance of a high blood pressure reading. Other office visits – especially when Plaintiff's blood sugar was under better control – report normal readings. R. 211 (March 2006 - 105/60); R. 213 (February 2006 - 112/70); R. 217 (January 2006 - 126/78); R. 233 (August 2005 - 105/68); R. 236 (July 2005 - 108/62); R. 241 (June 2005 - 98/58).

Moreover, as the Commissioner points out, during the hearing when Plaintiff was asked to tell the ALJ of her impairments (R. 276), she failed to even mention hypertension. The medical evidence of record fails to support any actual limitations resulting from the alleged hypertension that affect her ability to work. The ALJ's failure to list hypertension as a severe impairment for Plaintiff was based on substantial evidence.

*Carpal Tunnel Syndrome*

Similarly, the ALJ's failure to list carpal tunnel syndrome as a severe impairment for Plaintiff was also based on substantial evidence. Plaintiff again points to a single instance in the medical records on April 13, 2005 when she complained of pain in both wrists and numbness of the fingers, usually worse at nights. R. 247. Dr. Gavin added the new problem of bilateral carpal tunnel syndrome to Plaintiff's record; he commented that "extreme dorsiflexion causes pain" and advised Plaintiff to get wrist splints. R. 247-48. During the August 2006 hearing, Plaintiff discussed her carpal tunnel syndrome, and the ALJ stated that condition had not been treated for very long. R. 277-78. The Commissioner points out that the record fails to show any prognosis concerning her carpal tunnel syndrome or whether she used the wrist splints as advised. The Court agrees that "other than the one-time notation of diagnosis and Plaintiff's brief testimony, the record fails to show that her CTS is a disabling impairment." Doc. No. 19 at 5 (citing 20 C.F.R. §§ 404.1505, 416.905 (a medically determinable impairment must last or be expected to last for a continuous period of not less than 12 months)). The ALJ's omission of carpal tunnel syndrome as a severe impairment for Plaintiff was based on substantial evidence.

*Depression*

Plaintiff contends the ALJ should not have omitted her depression as a severe impairment and points to certain medical evidence and testimony. She points to the record of her visit on October 4, 2005 to Circles of Care psychiatric clinic. R. 206. At that time, Plaintiff reported poor sleep, increased weight gain, decreased energy, isolation, lack of motivation and racing thoughts. R. 206. Psychiatrist Dr. R.V. Radin diagnosed dysthymic disorder and depressive disorder, and prescribed Fluoxetine and Trazodone. R. 207. In November 2005, Dr. Radin increased Plaintiff's doses of the medications. R. 205.

The Commissioner contends that the ALJ properly considered and discussed Plaintiff's treatment for depression; the ALJ noted there was no evidence of any severe depression or undue anxiety and no evidence of any psychotic symptoms. R. 20 (citing R. 202). As the Commissioner points out, the record shows Plaintiff was treated on five occasions, and she was assigned a Global Assessment of Functioning (GAF) scale score of 65-70[1] which indicates mild symptoms or some difficulty in social or occupational situations, but generally is functioning pretty well with some meaningful interpersonal relationships. *See* R. 207. The ALJ noted in his decision Plaintiff's October 4, 2005 visit to Dr. Radin for the psychiatric evaluation, when he diagnosed Plaintiff with dysthymic disorder and depressive disorder and prescribed medication for treatment. R. 20 (citing R. 207). The ALJ also noted – significantly – that Dr. Radin noted at the follow-up visit on March 31, 2006, Plaintiff's statement that she was doing reasonably well with the medicine, and had no problems or side effects from the medication. R. 20 (citing R. 202). It is apparent that the ALJ carefully considered the evidence of Plaintiff's symptoms of depression. The medical and other evidence support the ALJ's determination that Plaintiff did not suffer a severe mental impairment.

### B.     Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her testimony regarding pain in her low back, neck and shoulders, and numbness and tingling in the right leg, and nausea and headaches from the pain medication she takes. R. 276, 278-79. She also argues that the ALJ erred by finding her subjective complaints not entirely credible as to the intensity, persistence and limiting effects. R. 21. She contends that the objective medical evidence demonstrates her credibility and that the ALJ failed

---

[1] According to the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.-text revision 2000), the GAF scale is used to report the clinician's judgment of the individual's level of functioning in the psychological, social and occupational realms especially useful in planning a course of treatment, measuring its impact and predicting outcome. A GAF score between 65-70 indicates some mild symptoms (*e.g.,* depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.,* occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Doc. No. 24, Ex. 1.

to provide adequate and specific reasons for discrediting her complaints. The Commissioner asserts that the ALJ's decision reflects a proper evaluation of Plaintiff's subjective symptoms in accordance with the Commissioner's regulations and Eleventh Circuit case law.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Plaintiff argues that her condition includes impairments known to cause pain, such as herniated and bulging discs, and radiculopathy, as supported by February 2, 2004 MRI which showed "a moderate sized herniated disc at L5-S1, possibly compressing the S1 nerve root." R. 139. Treating physicians Dr. Taraschi and Dr. Voepel diagnosed the Plaintiff with radiculopathy. R. 129, 168. Plaintiff contends that her condition was severe enough that it warranted treatment by a pain management specialist, Dr. Voepel, due to the severity of her pain. *See* R. 167. Plaintiff contends the ALJ fails to reference any of the Plaintiff's pain testimony to support his conclusions rejecting her testimony and make clear which of Plaintiff's testimony the ALJ found credible and which he did not.

Any symptom-related restriction will be taken into account to the extent that it can be reasonably accepted as consistent with the objective medical evidence and other evidence of record. Factors such as Plaintiff's daily activities, the location, duration, frequency, intensity of the alleged pain, the type of dosage and effectiveness of treatment are also relevant to the evaluation of subjective symptoms. See 20 C.F.R. §§ 404.1529(c)(3) and (c)(4), 416.929(c)(3), (c)(4); *Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir. 1987).

Determining the credibility of a Plaintiff's testimony is the duty of the Commissioner. *Richardson v. Perales*, 402 U.S. 389, 400 (1971); *Cartwright v. Heckler,* 735 F.2d 1289, 1290 (11th Cir. 1984). As reflected in the decision, the ALJ fully discussed evidence concerning Plaintiff's impairments of obesity, mild degenerative discogenic disease, diabetes, and L5-S1 central herniated nucleus pulposus. R. 19-21. The latest evidence of record consisted of Dr. Archinihu's consultative examination supporting Plaintiff's ability to perform light work, which is further supported by two state agency physicians' opinions. The ALJ also discussed Plaintiff's testimony of neck, shoulder, and sitting problems due to a crushed disc (R. 20, 276) and noted her statement that she needs to lie down during the day; that she has a shifted disc due to a pinched nerve; that she has numbness, pain and tingling in her right leg; that she has received treatment for depression; that her mental health is affected by her pain, and that her diabetes is controlled with medication. R. 20, 276-77. After complete consideration of the medical and testimonial evidence of record, the ALJ found the objective medical evidence did not support Plaintiff's stated impairments as disabling. R. 21.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 21. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard

even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated,

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> When the claimant saw Dr. John Spencer Archinihu in a consultative evaluation on March 29, 2005, he opined the claimant could sit for 8 hours, ambulate 20 miles and lift 20 pounds. He recommended weight loss. Also State Agency medical consultants gave a similar assessment on October 22, 2004 and April 27, 2005, finding the claimant could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She could stand and/or walk about 6 hours in an 8 hour workday and sit about 6 hours in an 8-hour workday.

R. 21.

Interspersed in the section summarizing Plaintiff's medical records are the ALJ's notations that Plaintiff's degenerative discogenic disease was mild at every level except L4-5 (R. 19); she had moderate size posterocentral disc extrusion with some slight inferior extension at L5-S1 (R. 19); on examination by Dr. Afong of the Back Center (her treating physician), although she complained of extreme pain in the lower back, she had no cervical, thoracic, or lumbar spinous tenderness, and upper and lower limb range of motion was within functional limits with no joint laxity, tenderness or swelling and 5/5 strength in upper and lower limbs. R. 19. The ALJ noted that Plaintiff saw Dr. Datta who discussed the pros and cons of anterior interbody fusion versus disc replacement surgery as well

-10-

as weight loss. R. 19. However, she was not interested in surgery at that time. R. 161. In discussing Dr. Archinihu's diagnosis in the section on Plaintiff's severe impairments, the ALJ thoroughly quoted and discussed Dr. Archinihu's examination findings, including his opinion that claimant's "physical limitations are mild." R. 19-20 (citing R. 176). Even though weight loss was recommended repeatedly to Plaintiff (*see* R. 225), Dr. Garvin noted, "Plaintiff admits t o staying at home and watching TV and eating." R. 220; R. 243 (June 2005: "not following diet or exercising"). He also "strongly recommended she get out of house and perhaps volunteer etc." R. 221.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ cited the objective medical records and the findings of the consultative examiner in discrediting Plaintiff's subjective complaints as to the intensity, persistence and limiting effects of Plaintiff's limitations. The ALJ's reasoning was based on the report of the consultative examiner's findings (R. 21) as well as inconsistencies between her statements and the notations in the medical records. R. 19-20. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. Moreover, the ALJ's reasons are supported by substantial evidence.

### C.   VE testimony

Plaintiff claims that because she suffered from chronic pain, hypertension, diabetic symptoms, obesity, and depression, she had non-exertional limitations, precluding her from performing past relevant work, and requiring VE testimony, which the ALJ did not obtain. The Commissioner argues

the ALJ did discuss and consider the testimonial and medical evidence of record and properly found Plaintiff's RFC consisted of light work, which enabled her to perform her past relevant work as an office worker. R. 20, Finding 5.

The Commissioner contends that because this case is a Step Four case in the sequential evaluation the Grids or use of a vocational expert (VE) testimony which occurs at Step Five is inapplicable, citing *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990) ("because the ALJ concluded that [the claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary.") and *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) ("The testimony of a vocational expert is only required to determine whether the claimant's residual functional capacity permits her to do other work after the claimant has met her initial burden of showing that she cannot do past work."). The Commissioner argues that the ALJ properly found that the evidence established that Plaintiff's past relevant work complied with his RFC findings.

At Step Four, the ALJ must determine whether Plaintiff has the residual functional capacity to perform the requirements of her past relevant work. If the plaintiff has the residual functional capacity to do her past relevant work, the plaintiff is not disabled. Only if the plaintiff is unable to do any past relevant work, the analysis proceeds to the fifth and last step. In his decision, the ALJ found that "the claimant has the residual functional capacity to [perform] light exertional level work and can return to past relevant work as an office worker." R. 20. Plaintiff argues the ALJ's failure to discuss her non-exertional limitations or whether those limitations limit any basic work activities was error because the ALJ was required to make a "specific finding" as to whether the non-exertional limitations were severe enough to preclude a wide range of work, citing *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

In this case, the ALJ properly determined that Plaintiff did not suffer from severe hypertension, or depression; she admitted her diabetes was under control with medication. R. 277. As discussed in detail above, the ALJ also properly rejected Plaintiff's testimony of disabling pain based on the March 29, 2005 consultative examiner's report from Dr. John Spencer Archinihu, who opined Plaintiff could sit for eight hours, ambulate two miles, and lift 20 pounds. R. 21 (citing R. 176). The ALJ also considered the opinions of state agency reviewing physicians who opined similarly on October 22, 2004, and April 27, 2005, that Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds and that she could sit, stand or walk six hours in an eight hour day. R. 21, 151-58, 180-88. The ALJ's RFC opinion was that Plaintiff was capable of light work was based on the medical evidence. R. 21. He further properly found Plaintiff's past work as an office worker complied with the physical and mental demands of the job as it is actually performed. R. 21, Finding 6 (citing R. 107). Because Plaintiff could perform her past relevant work as an office worker, it was unnecessary to reach Step Five, much less to call a VE to establish whether she could perform work existing in the national economy. *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in not calling a VE and the ALJ's findings are supported by substantial evidence.

### *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the

Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 18, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record